**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 20 B 20833 |
| | ) | |
| NATIONAL TRACTOR PARTS, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

This matter comes before the court on the motion of National Tractor Parts, Inc.

("Debtor") to modify its confirmed plan (the "Plan") pursuant to 11 U.S.C. § 1193(b) ("Motion

to Modify").  At the initial hearing, the U.S. Trustee objected verbally to the requested relief.

The court entered a scheduling order allowing the U.S. Trustee time to file a response, and for

Debtor to file a reply.  The parties timely filed their briefs.  Having heard the arguments

presented, reviewed the papers submitted and considered the applicable law, the court will enter

an order denying the Motion to Modify.

**I.      JURISDICTION**

The court has subject matter jurisdiction under 28 U.S.C. § 1334 and Internal Operating

Procedure 15(a) of the United States District Court for the Northern District of Illinois.  This

matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §

1409(a).  The Plan provided for retention of jurisdiction over the Debtor to implement or

consummate the Plan's provisions and for post confirmation modification.  *See* Plan, §§ 9.06,

9.09.

**II.      BACKGROUND**

Debtor sells heavy equipment and diesel engine parts.  It operates from facilities in Plano,

Illinois, and the Gunier family has managed and owned Debtor since 1984.  In 2014, Debtor

experienced a decline in sales and the loss of a major customer.  In addition, the operator of a

plant with which it did business filed for relief under chapter 11 in June 2020.  While recovering from these events, combined with the downturn in business attributable to the COVID-19 pandemic, Debtor fell behind on payments to its secured lender, First Midwest Bank (the "Bank"), as well as to its vendors and other lenders.

On November 30, 2020, Debtor filed this case under subchapter V of chapter 11 of the Bankruptcy Code.  It began to restructure its debt and right-size its business.  Debtor reached agreement with the Bank regarding the use of its cash collateral.  Several interim orders allowing Debtor to use cash collateral were entered as it worked with parties in interest to reach a consensual plan.

The Plan contains six classes of creditors and equity interests, including classes for priority claims, three separate secured creditors, general unsecured creditors and equity interests.  Class 5, the general unsecured creditors, includes treatment of a claim filed by the Small Business Administration ("SBA").  *See* EOD 113.

All five voting classes accepted the Plan.  The court confirmed the Plan pursuant to 11 U.S.C. § 1191(a) on December 8, 2021.  *See* Order Confirming the Chapter 11 Amended Plan Proposed by the Debtor, EOD 145 (the "Confirmation Order").  The Debtor's attorney served the Confirmation Order on parties in interest on December 10, 2021.  *See* EOD 146.

Section 8.02 of the Plan provides that the effective date of the plan is the first business day following the date that is 60 days after the entry of the confirmation order. The plan became effective on or about February 7, 2022.  Both Debtor's counsel and the subchapter V trustee filed their final fee applications.  *See* EOD 148, 149.  The court approved both applications. *See* EOD 151, 153.

2

According to paragraph 9 of the Motion to Modify, Debtor made two payments totaling $843.00 to Class 1 and two payments totaling $585.20 to Class 4. Debtor has not yet made its $50,000 payment to Class 2, and quarterly payments to Class 5 have not yet begun. Class 3 is treated as a class 5 creditor under the plan. Because the plan was confirmed under 11 U.S.C. § 1191(a), the holders of equity interests retained their interests in the reorganized Debtor. *See* Plan, §§ 4.01, 7.02.

In the Motion to Modify, Debtor proposes to change the Plan's treatment of SBA's unsecured claim. This claim is based on a prepetition loan made under the COVID-19 EIDL program (the "EIDL Loan"). It is currently being treated with other unsecured creditors in Class 5. After Plan confirmation, Debtor learned that it may be eligible for an increase in the EIDL Loan. The interest rate and repayment terms of this increase are attractive to the Debtor. According to the Motion to Modify, however, "because of the treatment of the pre-petition debt, the Debtor is not eligible to receive an increase, unless the treatment of the SBA is modified." Motion to Modify, ¶ 5.

Therefore, Debtor proposes to separately classify SBA, under new class 7. Debtor would pay SBA's claim according to the original terms, if and only if SBA provides that additional proposed funding. If it does not, the SBA claim will receive the original treatment provided to unsecured creditors in class 5. *See* Motion to Modify, ¶¶ 7, 13.

In addition to filing the Motion to Modify, Debtor served a notice of proposed plan modification pursuant to 11 U.S.C. § 1193(d). EOD 161. No creditor objected or notified Debtor that it intended to change its vote.

## III.   DISCUSSION

The Debtor's subchapter V plan was consensually confirmed and became effective on or about February 7, 2022.  The reorganized Debtor continues its operations and the equity holders maintain their interests.   After initial distributions were made to two classes of creditors[1] and after the court approved final fee applications for Debtor's attorney and the subchapter V trustee, Debtor made this request for modification of the plan.  It seeks to create a new class for a single unsecured creditor with conditional preferred treatment.

11 U.S.C. § 1193(b) governs when a chapter 11 debtor, proceeding under subchapter V, wishes to modify a plan after confirmation:

> (b)      MODIFICATION AFTER CONFIRMATION.--If a plan has been confirmed under section 1191(a) of this title, *the debtor may modify the plan at any time after confirmation of the plan and before substantial consummation of the plan*, but may not modify the plan so that the plan as modified fails to meet the requirements of sections 1122 and 1123 of this title, with the exception of subsection (a)(8) of such section 1123. The plan, as modified under this subsection, becomes the plan only if circumstances warrant the modification and the court, after notice and a hearing, confirms the plan as modified under section 1191(a) of this title.

11 U.S.C. § 1193(b) (emphasis added).

The Debtor and the U.S. Trustee disagree about whether the Plan has been "substantially consummated."  The definition of "substantial consummation" is found in 11 U.S.C. § 1101(2)[2]:

> (2)      "substantial consummation" means--
>
> (A)      transfer of all or substantially all of the property proposed by the plan to be transferred;

---

[1] There are five classes of creditors, but class 3 is treated as a class 5 creditor.  Class 6 received its distribution by maintaining its equity interests in the Debtor on the effective date.

[2] 11 U.S.C. § 1181(a) provides that § 1101(1) (defining "debtor in possession") does not apply in subchapter V of chapter 11 but imposes no such restriction on § 1101(2).  Therefore, this definition of "substantial consummation" applies in subchapter V.

(B)    assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C)    commencement of distribution under the plan.

The parties confirmed in court on June 1, 2022, that they do not dispute that all or substantially all of the property proposed by the plan to be transferred has been transferred. Neither do they dispute that the Debtor assumed the business or the management of all or substantially all of the property dealt with by the plan.  The only question is whether there has been "commencement of distribution under the plan."

Debtor argues that because "the Class 2 and Class 5 claims have received no payment, and because the actual distributions made to date are de minimis in relation to the total plan payments required[,]" distribution has not "commenced" and the plan is not substantially consummated.  Motion to Modify, ¶ 11.  This argument follows the interpretation of § 1101(2)(C) set forth in *In re Dean Hardwoods, Inc.*, 431 B.R. 387 (Bankr. E.D.N.C. 2010):

> [I]t seems that commencement should mean not just the beginning of payments to a single creditor, but the commencement of distribution to all or substantially all creditors…. According to the debtor's post confirmation report … the distribution required under the confirmed plan has not commenced for six of the twelve enumerated classes. Without more payments to classes of creditors in the confirmed plan and while continuing to make quarterly fee payments, there has not been substantial consummation of a confirmed plan.

*Id.*, 431 B.R. at 392.

Although it has mentioned the concept of "substantial consummation," the Seventh Circuit has not addressed this particular issue.  *See Matter of UNR Industries, Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) ("11 U.S.C. § 1127(b) dramatically curtails the power of a bankruptcy court to modify a plan of reorganization after its confirmation and 'substantial consummation'"); *Matter of Specialty Equip. Companies, Inc.*, 3 F.3d 1043, 1048 (7th Cir. 1993) ("If the Releases constitute an integral element of the bargain represented by the Plan, then substantial

5

consummation of the Plan would preclude the sort of challenge raised by appellants."); *Matter of Wade*, 991 F.2d 402, 406 n.2 (7th Cir. 1993) ("Section 1101(2) states that substantial consummation is reached when, *inter alia*, distribution has *commenced*, but not necessarily been completed.").

Since there is no binding authority on this issue, the court will use "well established principles of statutory construction" to interpret the meaning of "commencement of distribution under the plan" in § 1101(2)(C). *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012). The court begins its inquiry with the language of the statute. "[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Therefore, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." *Rubin v. U.S.*, 449 U.S. 424, 430 (1981) (quotation omitted).

11 U.S.C. § 1101(2)(C) is plain and unambiguous. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive[.]"). Section 1101(2)(C) tells us that a plan is substantially consummated (assuming the other two requirements are met) when commencement of distribution under the plan has occurred. This means that distribution under the plan has begun. The plain language of this Code section does not require commencement of distribution to every creditor, or every class, or even substantially all creditors or classes. It means, simply, that the process contemplated in the confirmed plan is underway. *See In re MF Global Holdings Ltd.*, No. 13 CIV. 3532(AT), 2014 WL 231130, at *3 (S.D.N.Y. Jan. 22, 2014) ("in this district there is no requirement that distribution commence to

6

every class of creditors or that the distributions be substantial; rather, it appears 'commencement of distribution' is satisfied as soon as a single payment is made to any creditor in any class").

Congress knows how to impose a condition of quantity or numerosity.  It did so in this very section, with the other two elements of "substantial consummation."  The first element requires the "transfer of *all or substantially all* of the property proposed by the plan to be transferred[.]" 11 U.S.C. § 1101(2)(A) (emphasis added).  The statute does not say "commencement of transfers," but instead that most or all of the transfers have been made.  Similarly, the second element requires there to have been "assumption by the debtor or by the successor to the debtor under the plan of the business or of the management *of all or substantially all* of the property dealt with by the plan[.]" 11 U.S.C. § 1101(2)(B) (emphasis added).

Meanwhile, the phrase "all or substantially all," present in both § 1101(2)(A) and § 1101(2)(B), is conspicuous in its absence from § 1101(2)(C). *See In re JCP Properties, Ltd.*, 540 B.R. 596, 607 (Bankr. S.D. Tex. 2015) ("To require a substantiality of distribution payments rather than a mere existence of distribution payments, where the very same definition expressly includes a substantiality component for transferred property, would render § 1101(2)'s 'all or substantially all' a mere surplusage within § 1101(2).").

It is Debtor's burden to show that the plan has not been substantially consummated.  To meet this burden, Debtor argues that the *Dean Hardwoods* analysis controls, and that "when the actual plan distributions are <u>de minimis</u> in relation to the total plan payments required," Reply at 2, § 1101(2)(C) has not been satisfied.

Without contrary Seventh Circuit precedent, Debtor relies on *Dean Hardwoods* and argues that its reasoning should be adopted in this case.  *Dean Hardwoods* claimed to be

following the plain meaning rule when it concluded "that commencement should mean not just the beginning of payments to a single creditor, but the commencement of distribution to all or substantially all creditors."  431 B.R. at 392.  But this analysis violates the plain meaning canon; it reads into § 1101(2)(C) a condition that does not exist. Moreover, the very next sentence in the *Dean Hardwoods* decision exposes the flaw in this logic.  "This line of reasoning … follows the rationale that substantial means something more than half."  *Id.*  But the word "substantial" modifies "consummation."  It does not modify "distribution."  *See JCP Properties, Ltd.*, 540 B.R. at 607 ("While 'substantial' may indeed suggest 'more than halfway,' … under ordinary parlance, RREF is erroneous in believing that § 1101(2)'s defined term 'substantial consummation' subsumes the inner definition's more clearly delineated language in order to inject a substantiality component into 'commencement of distribution under the plan.' This Court will not dislocate § 1101(2)(C) upon the rack of such a torturous reading.").

Congress decided that "commencement of distribution" was to be part of a multi-layered definition of "substantial contribution."  So long as *most of* the transfers of property had been made and *most of* the business or management had been assumed, then the distributions under the plan need only have commenced for a court to conclude that substantial consummation has occurred.  *See, e.g., In re Centrix Fin. LLC*, 394 F. App'x 485, 489 (10th Cir. 2010) ("Appellants' construction of § 1101(2)(A) as requiring completion of substantially all payments to creditors would render meaningless § 1101(2)(C), which requires only that distributions under the plan be commenced.") (unpublished order and judgment).

The *Dean Hardwoods* decision is in the minority.  *See In re Western Capital Partners LLC*, No. 13-15760 MER, 2015 WL 400536, at *8 n.40 (Bankr. D. Colo. Jan. 28, 2015) ("The Court acknowledges a minority of courts require most or all distributions be made to all class

8

claimants in order to satisfy § 1101(2)(C).”). Only two published decisions followed it on this point, both from the same district. *In re Archway Homes, Inc.*, No. 12-02226-8-SWH, 2013 WL 5835714, at *4 (Bankr. E.D.N.C. Oct. 30, 2013) (“[T]these facts do not present a hard question. Looked at from another perspective, it would defy common sense if this court were to find that the lack of payment to two of nine unsecured creditors, in the face of all the other steps that the debtor has diligently and appropriately taken towards bringing the plan to completion, precluded a finding of substantial consummation.”); *In re McDonnell Horticulture, Inc.*, No. 12-09009-8-DMW, 2015 WL 1344254, at *3 (Bankr. E.D.N.C. Mar. 20, 2015) (“courts in this District have held that distribution of payments under a plan needs to have commenced with respect to ‘all or substantially all’ creditors”).

Dean Hardwoods is not binding on this court and its reasoning cannot be reconciled with the plain and unambiguous language of section 1101(2) of the Bankruptcy Code.

### IV.    CONCLUSION

Under the applicable canons of statutory construction, the correct reading of 11 U.S.C. § 1101(2)(C) is that, if the other two requirements are satisfied, a plan is substantially consummated once any payment to any creditor is made. Therefore, the Plan is substantially consummated and may not be modified. An order will be entered denying the Motion to Modify.

Date:   June 6, 2022

_____
DAVID D. CLEARY
United States Bankruptcy Judge